Walker vs. The State.

## WALKER VS. THE STATE.

1. CARRYING WEAPONS: *Indictment for.*

An indictment, under the act of 1875, for unlawfully carrying a pistol as a weapon, need not negative the exceptions contained in the *proviso* of the act.

2. SAME: *Jurisdiction.*

Carrying a pistol as a weapon is a misdemeanor of which justices of the peace and circuit courts have concurrent jurisdiction under the constitution.

3. BILL OF EXCEPTIONS: *Must be filed and made part of the record.*

If the bill of exceptions copied in the transcript is not indorsed "filed" by the clerk, and there is in the transcript no record entry showing that it was filed and made part of the record, the question whether the evidence warranted the verdict is not legally before this court.

4. VENUE: *Failure to prove, no cause for arrest of judgment.*

That an alleged offense was not committed in the county, is not properly matter in arrest of judgment, but cause for new trial.

5. CIRCUIT COURTS: *The act establishing a court at Dardanelle constitutional.*

The act of 1875, creating the Dardanelle district in Yell county, and requiring the circuit court of that district to be held at Dardanelle, is constitutional; and the provision limiting the selection of the grand and petit juries of that district to the territory comprised within the district is not in conflict with the tenth section of the Declaration of Rights.

Walker vs. The State.

ERROR to *Yell* Circuit Court.
Hon. W. D. JACOWAY, Circuit Judge.
*Clark & Williams*, for plaintiff.
*U. M. Rose*, contra.

ENGLISH, C. J.   The indictment is as follows:

" The grand jury of Yell county, in and for the Darda-
nelle district, in the name and by the authority of the state
of Arkansas, accuse H. W. Walker of the crime of a mis-
demeanor, committed as follows, viz.:   The said H. W.
Walker, on the fifth day of January, A. D. 1878, in the
district, county and state aforesaid, unlawfully did carry a
certain pistol as a weapon, against the peace," etc.

The indictment was returned into court on the twenty-
seventh of February, 1878.   At the August term following,
defendant demurred to the indictment, on the ground that
it did not negative the exceptions made by the *proviso* of
the act under which it was preferred (*Acts of 1875, p. 155*),
and the court overruled the demurrer.

At the February term, 1879, defendant demurred to the
indictment, on the ground that the court had no jurisdic-
tion to try the case, and the demurrer was overruled.

At the August term following, defendant was tried on
plea of not guilty, and verdict and judgment against him
for a fine of $25.

He moved for a new trial, on the grounds that the verdict
was not warranted by the evidence, and contrary to law,
and the court overruled the motion.

He also filed a motion in arrest of judgment, on the fol-
lowing grounds:

" 1.   Because the act of the legislature entitled, ' An act
to establish separate courts in the county of Yell,' approved

Walker vs. The State.

December 15, 1875, whereby the Dardanelle district of Yell county was constituted, established and organized, is unconstitutional.

"2. Because the alleged offense was not committed in the territory embraced in said Dardanelle district of Yell county, as established by said act."

There is a bill of exceptions copied in the transcript, purporting to be signed by the judge, but it is not indorsed filed by the clerk, nor is there in the transcript any record entry showing that it was filed and made part of the record.

1. CARRYING WEAPONS: Indictment for.

I. We have heretofore decided that an indictment under the act of the sixteenth of February, 1875, for unlawfully carrying a pistol as a weapon, need not negative the exceptions made under the *proviso* of the act. *Wilson v. The State, 33 Ark., 557.*

2 ————: Jurisdiction.

II. Carrying a pistol as a weapon, in violation of the act, is a misdemeanor, and the circuit courts and justices of the peace have concurrent jurisdiction of misdemeanors, under provisions of the constitution, as held in *The State v. Devers, 34 Ark., 188.*

Both demurrers to the indictment were properly overruled.

3. BILL OF EXCEPTIONS: Must be filed and made part of the record.

III. As the paper copied in the transcript purporting to be a bill of exceptions, and to contain the testimony introduced at the trial, was not made part of the record, the question whether the evidence warranted the verdict is not legally presented. The plaintiff in error was found guilty by the jury, the court overruled the motion for a new trial, and, in the absence of a legal showing to the contrary, the verdict and judgment are presumed to be right.

Walker vs. The State.

IV. The second ground of the motion in arrest of judgment, that the offense was not committed in the Dardanelle district, is not properly matter in arrest; but, if true in fact, cause for a new trial.

4. VENUE: Failure to prove, no cause for arrest of judgment.

A judgment may be arrested for error appearing of record, and the Code-makers have undertaken to say that "the only ground upon which a judgment shall be arrested is that the facts stated in the indictment do not constitute a public offense within the jurisdiction of the court." *Gantt's Dig., sec. 1975.*

It is alleged in the indictment that the offense was committed in the Dardanelle district, and if the state had failed to prove this, or any other material allegation of the indictment, a new trial should have been granted.

V. If the act creating the Dardanelle district, and requiring the circuit court to be held twice a year at Dardanelle, as well as at Danville, the county seat of Yell county, is in violation of any provision of the constitution, and therefore void, the judgment should have been arrested— indeed the whole prosecution was *coram non.*

5. CIRCUIT COURT: The act establishing at Dardanelle, constitutional.

In *Jones, ex parte, 27 Ark., 349,* a similar act, providing for the holding of the circuit court of Sebastian county at Fort Smith, as well as at Greenwood, the county seat, for public convenience, was held to conflict with no provision of the constitution of 1836, or the constitution of 1868. See, also, *Patterson v. Temple, ib., 202.*

The act of the fifteenth of December, 1875 (Acts of 1875, p. 188), appears to have been carefully drafted, in view of the above decision, and to overrule it, and to hold the act void, on a mere doubt, and thereby avoid all the judicial proceedings which have occurred in the courts held at Dardanelle, under the act, would be a public calamity.

Section 12, of article VII, of the present constitution,

provides that "the circuit courts shall hold their terms *in each county* at such times and *places* as are, or may be, prescribed by law."

Here the places (plural) as well as the times of holding the circuit courts of each county are left open to legislation. It is probable that the framers of the constitution anticipated that as the state increased in population, large towns and populous communities might spring up remote from county seats, and that public convenience might, in some instances, require the circuit court of a county to be held in more places than one. Whether public convenience demanded the passage of the act providing for holding terms of the circuit court of Yell county at Dardanelle, a commercial town on the Arkansas river, as well as at Danville, the county seat, was a matter of legislative discretion, which it is not our province to supervise.

The act does not, as suggested by counsel for plaintiff in error, reduce the area of Yell county, or change its county seat from Danville; it merely divides the county into two judicial districts, for the purpose of the act (see *Const. Art. XIII, secs. 1, 2, 3 and 5*), and is carefully framed so as to leave the county seat proper, and for general county purposes, at Danville.

VI. It appears of record that the grand jury which found the indictment, and the petit jury which tried the case, were selected from the Dardanelle district, in which the offense is alleged to have been committed, in accordance with provisions of the act; and counsel for plaintiff in error submits that any provision of the act limiting the selection of jurors to a district of the county is in conflict with the tenth section of the Declaration of Rights.

The act provides that the county of Yell shall be divided into two judicial districts, to be called the Dardanelle dis-

trict and the Danville district, and that all that portion of the said county known as Galla Rock, Dardanelle and Delaware townships shall compose and be called the Dardanelle district; and all the residue of said county shall compose, and be called the Danville district; and provides for the county court to fix the boundaries of the districts, etc. *Sec. 1.*

Section 8 provides that the citizens of Yell county shall only be liable to serve on juries in the districts in which they reside, but all persons may be subpœnaed in any portion of said county to attend either court, etc.

Section 10 of the Declaration of Rights declares that: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the county in which the crime shall have been committed," etc.

By the charter of the city of New Haven, jurors for the city courts were required to be taken from the freemen of the city, and in *Colt v. Eves, 12 Conn., 251*, the court said: "The objection is that the jurors are not taken from the body of the county, but from a particular section; and so the trial by jury is not preserved inviolate. To preserve the trial by jury inviolate, can not mean that we must pursue the exact course taken in England to collect jurors. If it does, what time is to be selected; for they have been constantly altering the qualifications, the exemptions, and modes of summoning jurors. Besides, the common law requires merely, that the jury should come from the *vicinage.*"

The statute of *4 and 5 Anne*, requires that the jury should be taken from the body of the county.

"The most general rule," says Lord COKE, "is that every trial shall be of that town, parish or hamlet, or place known

---

Walker vs. The State.

---

out of the town within the record, within which the matter of fact issuable is alleged, which is most certain and nearest thereunto, the inhabitants whereof may have the better and more certain knowledge of the fact.   *    *    *. The strict principle of the common law seems to have been adopted in the city charter, and a great inconvenience to our remote citizens thereby avoided.   Were this, however, an innovation upon the common law, it would not follow that the trial by jury was not preserved inviolate.   It never could have been intended to tie up the hands of the legislature so that no regulation of the trial could be made by jury," etc.

"Many of the incidents of a common law trial by jury," says Mr. COOLEY, "are essential elements of the right.   The jury must be indifferent between the prisoner and the commonwealth.   They must also be summoned from the vicinage where the crime is supposed to have been committed ; and the accused will thus have the benefit, on his trial, of his own good character and standing with his neighbors, if these he has preserved ; and also of such knowledge as the jury may possess of the witnesses who may give evidence against him.   He will also be able with more certainty to secure the attendance of his own witnesses." *Cool. Con. Lim., 4 ed., pp. 395–6.*

The people of the colonies complained of the crown of England, in the Declaration of Independence, that they had been deprived, in many cases, of the benefits of trial by jury, and transported beyond seas to be tried for pretended offenses.

Our Declaration of Rights secures to the accused a speedy public trial, by an impartial jury of the county in which the crime is committed.

The accused can not be tried out of the county in which

the crime is committed, except upon a change of venue, on his own application, nor can jurors be summoned from other counties to try him.

An act of the legislature of Iowa provided for holding the district courts in the county of Lee at Fort Madison and at the city of Keokuk, and gave the latter court jurisdiction in all criminal cases in the city of Keokuk, and in the townships of Jackson, Des Moines and Montrose, in said county of Lee.

*Trimble v. The State, 2 Green's Rep., 404,* was an indictment for murder in the district court at Keokuk. The prisoner challenged the array of grand and petit jurors, on the ground that they were taken from the district and not from the body of the county of Lee. On error to the supreme court, WILLIAMS, C. J.. among other things, said:

"It is contended by defendant's counsel that the venire for the summoning of the grand and petit jurors, requiring them to be taken from the city of Keokuk and the townships of Jackson, Des Moines and Montrose, and n)t from the body of the whole county of Lee, is defective in law, and is in derogation of the rights of the prisoner.

"The right of the legislature to divide the county for judicial purposes is denied. The judicial power of the state is invoked to maintain the rights of the accused, as guaranteed by the law of the land. It is alleged that by confining the selection of grand and petit jurors, the accused has been curtailed in his right to have his case committed to juries made up of the qualified voters chosen from the body of the county of Lee, as the venire required that they be taken from the townships of Jackson, Des Moines and Montrose, in the county of Lee."

After deciding that the division of the county into judi-

cial districts, for public convenience, was not prohibited by the constitution, the opinion proceeds:

" The townships of Jackson, Des Moines and Montrose are within the county of Lee, and the jurors having been selected from them, were taken, as required by law, from the body of that county, and not of another. The body of the county is to be considered as expressing the county limit, so as to prevent the selection of jurors residing without the county. We do not understand that the law requires jurors to be taken from any and all portions of the county. *    *    *    *    *    The three townships which are set apart for judicial purposes in establishing the court at the city of Keokuk, contain a population amply sufficient for the procurement of a proper number of good and lawful men to constitute juries for the criminal and civil causes. If by reason of great excitement, or otherwise, prejudice should exist against a party, so as to prevent a fair and impartial trial, the statute has provided a remedy allowing a change of venue."

If the legislature may divide a county into judicial districts for public convenience, it would, to some extent, defeat the purpose and policy of the act to require jurors to be taken from the whole county to serve in the circuit court held in each district.

It does not follow, as submitted by counsel for plaintiff in error, that if so much of the act be sustained as requires jurors to be taken from within the limits of the judicial district, a valid act might be passed requiring the sheriff to summon jurors, in a criminal case, from some particular township, section, or subdivision of a section.

The power of the legislature to excuse citizens from jury service who reside without the limits of a judicial district established for public convenience, may not be entirely free

from doubt, but, by a long-settled rule, the courts must resolve mere doubts in favor of the validity of legislative acts.

Affirmed.