## KENT *v.* STATE.

### Opinion delivered July 3, 1897.

CHANGE OF VENUE—COUNTY HAVING TWO DISTRICTS.—Where an act creating two judicial districts in a county provides that the circuit court "may change the venue from one district to another, or to any other county in the judicial circuit," one accused of a felony, who asks for a change of venue from the district in which the offense was alleged to have been committed, is not entitled to have the venue changed to the other district of the county, and cannot complain if the venue is transferred to another county in the same circuit. (Page 250.)

CORROBORATION OF ACCOMPLICE—INSTRUCTION.—The court's refusal to give an instruction as to the necessity of corroboration of an accomplice, couched in the language of the statute, was not prejudicial where other instructions given, taken as a whole, conveyed the same idea, though in other language. (Page 250.)

SAME—SUFFICIENCY OF EVIDENCE.—The statutory requirement that the testimony of an accomplice shall be corroborated is fulfilled if there be any evidence, independent of the testimony of the accomplice, which of itself tends to connect the accused with the offense; its weight being a question for the jury. (Page 251.)

Appeal from Izard Circuit Court.

JOHN B. McCALEB, Judge.

## STATEMENT BY THE COURT.

The grand jury for the southern district of Sharp county returned an indictment against William Kent, charging him with stealing $1,800 in money from Robert Wooldridge. Kent filed an application for a change of venue from said district on the ground that the minds of the inhabitants thereof were so prejudiced against him that a fair and impartial trial could not be had in said district. The prayer of the petition was sustained, and the venue changed to Izard county. Afterwards he filed in the Izard circuit court a motion to dismiss the action for want of jurisdiction, which motion was overruled. Upon the trial it was shown that Robert Wooldridge, an old man, had in his possession at the time of the larceny about $1,800, of which he was the owner. At the time of the larceny he was staying at the house of his son, Brownlow Wooldridge. The wives of Brownlow Wooldridge and Kent were sisters, and on the night of the larceny Kent and his wife stayed with Brownlow. The old man, Robert Wooldridge, retired early, and placed his vest, containing his money, under his pillow between the feather-bed and mattress upon which he was sleeping. Brownlow Wooldridge and wife and also Kent and wife slept in the same room with Robert Wooldridge. During the night some one entered the room, and took the vest, containing the money, and carried it away. Mack Johnson, a witness for the state, testified that he committed the larceny at the request of Kent, who was present, aiding and abetting. He stated that the larceny was suggested by Kent, who told witness that old man Wooldridge had money, and was staying with his son, Brownlow; that he (Kent) had "fixed everything all right" by sending his wife there, and would spend the night there himself. Witness also stated that by arrangement with Kent he went to the house on the night of the larceny. Kent came out of the house, and met him. After some conversation Kent re-entered the room, and witness, acting on Kent's suggestion, followed him, and remained there about half an hour. He then went to the bed where the old man was sleeping, and took the vest and money. Afterwards he divided the money with Kent. The other evidence is sufficiently stated in the opinion.

*Yancey & Fulkerson*, for appellant.

The Izard circuit court had no jurisdiction. The venue should have been taken to the northern district of Sharp county. Acts 1893, p. 58, § 7. The act is constitutional. 53 Ark. 211; 35 *id.* 386. Defendant was entitled to a trial by a jury of Sharp county. Const. 1874; 32 Ark. 569; 30 *id.* 41. There was no evidence to base instruction No. 7 upon. 24 Ark. 251; 58 Ark. 353, 366. It was error to give instruction 5 and refuse 8. The first is too narrow; the latter is in the language of the statute. 58 Ark. (353) 365; 22 Pick. (Mass.) 397; 1 Am. & Eng. Enc. Law (2 Ed.), 403. It was error to admit the testimony of Will Simpson; it was not competent. 68 Ala. 580.

*E. B. Kinsworthy*, Attorney General, for appellee.

The venue was changed on defendant's own motion. The two districts of Sharp county are as if separate counties. Acts 1893, § 7, p. 58; art. 2, § 10, const.; 53 Ark. 211. Instruction 7 was supported by ample evidence. Instruction No. 5 is the law. Sand. & H. Dig., § 2230; 50 Ark. 544; 57 Iowa, 431; 19 *id.* 169; 56 Fed. 21; 40 Ala. 684; 68 *id.* 56; 73 Cal. 313; 53 Iowa, 299. If the corroborating evidence tends to connect defendant with the crime, it is sufficient. 60 N. W. Rep. 66. Circumstancial evidence, if it is material, and tends to connect defendant with the crime, is sufficient. 52 Ark. 181; 75 Cal. 305; 92 Ga. 313. The testimony of Will Simpson strongly supports the evidence of Mack Johnson. 2 Hawks (N C.), 449; 12 Wend. (N. Y.) 78. There is enough evidence to sustain the verdict.

RIDDICK, J., (after stating the facts.) The appellant, Kent, was indicted by the grand jury for the southern district of Sharp county for larceny alleged to have been committed in said district. He afterwards made an application for a change of venue from said district, and the circuit court changed the venue to Izard county. Appellant now contends that, as his application for a change of venue applied only to the southern district of Sharp county, and not to the whole of said county, the circuit court had no authority to change the venue to another county, and that for this reason the circuit court

of Izard county was without jurisdiction to try the case. But with this contention we cannot agree. The act of 1893, which divided the county of Sharp into two districts, provided, among other things, that the circuit courts of the two districts "shall be as distinct from each other, and have the same relation to each other, as if they were circuit courts in different counties, and may change the venue from one district to another, or to any other county, in the judicial circuit in like manner as changes of venue are granted in this state." It was further provided that for the purposes of the act the two districts should be considered as separate and distinct counties, and that citizens of the county should only be compelled to serve on juries of the district in which they reside. Counsel for appellant concede that the provisions of this act are constitutional. By virtue of such provisions the defendant had only the right to a trial by a jury of the district in which the crime was committed. *Walker* v. *State*, 35 Ark. 386. Had he been tried in the district where he was indicted, he could not have complained that the act limited the selection of jurors to persons residing in that district. *Walker* v. *State*, *supra*; *Wells* v. *State*, 53 Ark. 211. In other words, the provision of the constitution which guaranties him the right of trial by an impartial jury of the county in which the crime is committed is satisfied by a trial before a jury of the county selected from that district in which the crime was committed. But appellant waived the right to such a jury—the only jury of the county that under the constitution and statute he had a right to demand—by his motion for a change of venue. He had no right to a trial by a jury of the other district, and it was within the discretion of the circuit court to change the venue either to the other district or to another county. We are therefore of the opinion that the circuit court committed no error in overruling the motion to dismiss for want of jurisdiction.

Appellant further contends that the presiding judge erred in refusing to give to the jury the following instruction, to-wit: "A conviction cannot be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely

shows that the offense was committed and the circumstances thereof." This instruction, copied from the statute (Sand. & H. Dig., § 2230), is correct, clear and easily understood, and might well have been given, but the circuit judge had previously given to the jury two instructions, on his own motion, which, although some longer, we think are in meaning the same as the instruction asked.

In one of the instructions given the jury were told that, in order to convict, it was necessary that the testimony of the accomplice should "be corroborated by other testimony tending to connect the defendant with the commission of the crime." In the other instruction the judge, speaking to the jury, said it is not necessary that the evidence of the accomplice "be corroborated on every point on which he has testified, but if you believe that he is corroborated as to the commission of the crime charged, and on any point tending to connect the defendant with the commission of the offense, and if the evidence with this corroboration is sufficient to satisfy your minds beyond a reasonable doubt that the defendant is guilty, then you would be authorized to so find." Counsel contend that the expression corroborated "*on any point*" is too narrow, and renders the instruction erroneous. But while the word "point" is generally used in connection with a legal proceeding to denote some question of law "arising or propounded therein" (Black's Law Dict. p. 90), yet, when this expression in the instruction is considered in connection with the previous instruction, it is clear that the court used the word "point" as synonymous with the word "fact." A charge of a judge to a jury must always be considered as an entirety. (2 Elliott's Practice, § 924.) When the charge here is thus considered, we think the meaning of it is clear, and there was no error. It was unnecessary to add that the corroboration must be upon a material fact, for evidence of a fact tending to connect the defendant with the commission of the crime is necessarily material.

There are other objections presented to the charge of the presiding judge, but, after consideration of the same, we are of the opinion that no error prejudicial to defendant was committed.

While the evidence introduced to connect the defendant

with the crime is not entirely convincing to us, still we think it is sufficient to uphold the verdict. The money was stolen at night from under the head of a sleeping man. In the room at the time were four other adult persons. The circumstances in proof tend to show that the money was stolen by some one not only very familiar with the habits of the old man, Robert Wooldridge, but also with the room, and with the position of the bed in which he slept. If Mack Johnson committed the crime, as he testified that he did, the circumstance would seem to indicate that some one who stayed in the room that night was an accomplice. One of the four adult persons in the room that night beside Robert Wooldridge, the owner of the money, was his son, another the son's wife, the other two were defendant and his wife. There is no evidence tending to connect any of these persons with the crime except defendant, but there is evidence tending to connect defendant. The evidence of Mack Johnson, the accomplice, is direct and positive that defendant was a party to the crime. In addition to his testimony, and as tending to connect defendant with the crime, it was shown that he was an intimate associate of Mack Johnson. They were seen together the morning after the larceny, and when defendant was first arrested for the crime, Mack Johnson gave him fifty dollars to pay his attorney's fee. Will Johnson, a brother of Mack Johnson, at one time in a conversation with defendant about the larceny, stated to him that "Mack was going to give the thing away." To this remark witness said, "defendant replied that if he did his friends would kill him." Defendant afterwards asked this witness, while attending court, to get his brother Mack Johnson to leave, saying that " it would be too late to indict at the next term of court." When the deputy sheriff, Pickens, arrested the defendant, he asked the officer what it meant. To which Pickens responded: "Mack Johnson has given this money thing away." Defendant thereupon said: " I intended to do that myself; intended to do so this very day, and if the grand jury had sent for me I would have told it." Defendant afterwards asked Pickens what he intended to testify against him. "I told him," said Pickens, " I would tell about the remarks he made to me when I served the warrant on

him, and he just remarked that 'a favor in this would be long remembered.' "

A portion of this testimony quoted above was contradicted by defendant and his witnesses, and other parts of it were explained by him in a manner consistent with his innocence. But it was for the jury to decide what weight to give to such evidence, and also what importance to attach to the explanation thereof.   The supreme court of California, discussing the amount of corroborating evidence required under a statute similar to ours, said that, although the corroborating evidence was slight, yet that "the requirements of the statute are fulfilled if there be any corroborating evidence which of itself tends to connect the accused with the offense."   *People* v. *Melvane*, 39 Cal. 614.   See also *Fort* v. *State*, 52 Ark. 187; *People* v. *McLean*, 84 Cal. 480.

It is the duty of the presiding judge to see that there is some evidence, independent of the testimony of the accomplice, which of itself tends to connect the accused with the commission of the crime, but the question of what weight to attach to the evidence is for the jury.

In this case the fact that the money was stolen was clearly proved, and, apart from the testimony of the accomplice, the statements of the accused and other circumstances in proof tended to connect him with the crime.   Though not very strong, the corroborating evidence is sufficient to support the verdict, and the judgment is therefore affirmed.

Absent WOOD, J.