[Crim. No. 928.　In Bank.—August 14, 1903.]

## THE PEOPLE, Respondent, v. ED MORTON, Appellant.

CRIMINAL LAW—ROBBERY—TESTIMONY OF ACCOMPLICE—WANT OF COR-
ROBORATION.—Where a confessed accomplice in a robbery, who was
relieved from prosecution, testified circumstantially to the robbery
committed jointly by him and the defendant convicted, but there
was no other evidence which in itself, and without the aid of the
testimony of the accomplice, tended to connect the defendant with
the commission of the offense, the evidence is insufficient to sustain
the conviction.

ID.—OPPORTUNITY.—Mere proof of opportunity of the defendant to
participate in the robbery charged is not sufficient corroboration of
the testimony of the accomplice, especially where others had the
like opportunity.

ID.—IMPROPER CROSS-EXAMINATION OF DEFENDANT—CONVERSATIONS
WITH ACCOMPLICE.—Where the defendant in his testimony in chief
had merely denied a conversation, testified to by the accomplice
upon the evening of the robbery, a question on cross-examination as
to language supposed to have been spoken to the accomplice when
first brought up to the superior court, which implied that he then
admitted his guilt to the accomplice, was not proper cross-examina-
tion, and prejudicial error will be presumed from the allowance of
such questions, notwithstanding a negative answer given by the
defendant.

APPEAL from a judgment of the Superior Court of Mon-
terey County and from an order denying a new trial.　N. A.
Dorn, Judge.

The facts are stated in the opinion of the court.

Fred A. Treat, for Appellant.

U. S. Webb, Attorney-General, C. N. Post, Assistant At-
torney-General, and Charles Jones, for Respondent.

HAYNES, C.—The appellant and one Robert Stokes were
jointly indicted for the crime of robbery from the person of
one William Hickling.　Separate trials were demanded, and
appellant, Morton, was put upon trial, was found guilty and
sentenced to imprisonment in the state's prison for the term
of ten years, and appeals from the judgment and from an
order denying his motion for a new trial.

During the trial, and before the prosecution rested, upon motion of the district attorney, the prosecution was dismissed as to defendant Stokes, who was thereupon called and sworn as a witness for the prosecution, and testified circumstantially that he and Morton together committed the robbery, taking from Hickling, by force, a silver watch and chain and about six or seven dollars in money, and that he kept the watch, and Morton the chain and money.

Appellant contends that the testimony of Stokes, a confessed accomplice, was not corroborated as required by section 1111 of the Penal Code; that, aside from the testimony of the accomplice, "there was no evidence which, in itself and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense"; and this contention must be sustained. Hickling, the prosecuting witness, testified that he had never, to his knowledge, seen Ed Morton before the time of the trial; that he knew Stokes, and saw him on the night of December 22, 1902, at the Klondike Saloon; that there were about twelve others there, but he did not remember to have seen Ed Morton; that he did not know how long he was at said saloon; that he was in and out several times; that he might have been there four hours altogether; that he started home about ten or eleven o'clock; that every time he drank he called up every one in the house, and may have spent six or seven dollars; that he was in three or four other saloons; that he left the saloon to get his horse, and when he was about three parts of the way up the block some one came up behind him and caught him round the throat and threw him down on the side; that he felt a grab for his watch; that the bar was broken inside and his pocket turned inside out; that he tried to turn over; that they gave him an extra squeeze and let go and ran; that he turned and saw two men running down Monterey Street toward Sausal Street, and saw them going through a fence toward an alley in the direction of Main Street; that he ran round to intercept them at the alley, but did not see them; that he ran several blocks, and informed Officer Happ and Constable Church of the hold-up; that, besides the watch and chain, six or seven dollars were taken; that he had known Stokes more than three years; that Stokes was more or less familiar with him at the Red

Front Saloon; that others were there also, but he did not
know who they were; that he left the saloon the back way to
Monterey Street, where he was robbed, and saw no one until
he saw the two men running; that nothing was said while they
were robbing him; that he left the saloon between ten and
eleven, and that it was a beautiful moonlight night; that he
treated four or five times, and did not remember that any one
else treated, and that Stokes was in the saloon just before he
left.   The sheriff testified that defendant Morton told him
that he was in said saloon from eight o'clock until twelve, and
that Hickling was there.   Mr. Happ, the watchman, to whom
Hickling complained of the robbery, testified that Hickling
informed him of the robbery at about a quarter to eleven that
night, and that, after going to Gabilan and Monterey streets,
they went to said saloon; that he saw Mr. Church there, and
as he (Happ) started to go out he met Morton and Stokes
coming into the saloon; that it was then a quarter past eleven;
that he did not speak to them; that he did not see either of
them treat, but heard Morton call up for the drinks, and that
this was half an hour after Hickling informed him of the
robbery.   Mr. Church, recalled by the people, testified that he
was in the saloon and saw Morton; that Berden was there;
that Stokes came in and Morton came in after.   He further
testified that he was in the back room of the saloon about
eleven o'clock, and saw Morton, Stokes, and Mr. Happ in
there, and that Morton asked him to drink.

Charles Robson, called for the people, testified that he was
in the Red Front Saloon, and saw Morton, Stokes, and Ber-
den there, and that Stokes was in there about ten minutes
before Morton came in.

This testimony of Happ, Church, and Robson was given by
the prosecution for the purpose, we assume, of corroborating
the testimony of Stokes, the accomplice, that defendant Mor-
ton aided in the robbery.   Stokes testified that he and Morton
did not return to the saloon together; that he went through
a break in the fence into a vacant lot, hid the watch in the
alley near Barlogio's saloon, and entered the saloon the back
way; that Morton went straight down Monterey Street; that
he (Stokes) had been in the saloon five or ten minutes before
Morton, and that Morton came in the front way.

Thus we have the attempt to corroborate the testimony of Stokes that Morton aided in the robbery by proving by Happ that both entered the saloon together by the front way as he was going out, and by Church and Robson, that they did not come in together, but that Stokes entered about ten minutes before Morton, and that Happ, Morton, and Stokes were with witness in the back room. All this evidence was given on behalf of the prosecution, and Church was recalled after Happ testified to meeting Stokes and Morton entering by the front door, for the evident purpose of correcting his error and sustaining the testimony of Stokes that they did not return together. The argument would therefore be, that if they did not return together, the testimony of the accomplice, Stokes, that Morton aided in the robbery, is corroborated by that fact, and if they did return together, he is also corroborated by that fact, and that the truth upon that subject is unimportant and immaterial.

These men, Morton and Stokes, were not alone at any of the saloons. Stokes testified he had known defendant, Morton, about a year and a half, but it does not appear that they were friends or companions. Hickling appears to have done the treating, calling up every one who was in the saloon. He said he did not know Morton, but did know Stokes, and that "there were others there, about twelve others." Hickling further testified that nothing was said while he was being robbed, but Stokes testified that "when Morton grabbed Hickling and held him down, Morton said 'Come on, Stokes' "; and upon cross-examination Stokes further testified that Morton, when he keeled Hickling over and got hold of his chain, said, "God damn you," and that he stood there and watched Morton until he said "Come on, Stokes."

J. W. Nesbitt, city marshal, identified the watch, and testified that it was delivered to him by Stokes in the evening a few days after the robbery; that he arrested Morton about ten o'clock the same evening, and that Church assisted him; that at that time he heard Morton speaking to Church; that he (Nesbitt) came up about the close of the conversation, and heard Morton say that he was not guilty, and that they did not find anything on him, and, "if he remembered rightly," that "You did n't find the watch on me." Church had been

examined by the prosecution before Nesbitt testified, but made no statement of any conversation with defendant Morton. Whatever was said by the defendant concerning the watch, if anything, was said to Church, who could have given the whole conversation; while Nesbitt candidly testified that he came up about the close of the conversation with Church, and heard him say he was not guilty, and, in reply to something said by Constable Church, said, "You did n't find the watch on me." If this remark was voluntary, and not made in reply to a statement by Church, that the watch was found upon Stokes, we may fairly assume that Church would have so testified. He was called by the prosecution and examined, and afterwards recalled, but did not testify or allude to his conversation with Morton, a fragment of which was testified to by Nesbitt, the city marshal, who heard only the statement of Morton, and not the conversation or circumstances which inspired it. It was the duty of the district attorney to have recalled Church and brought out the whole of the conversation and what led to it. This fragment of the conversation is relied upon as a corroboration of Stokes's testimony. Stokes gave the watch to Nesbitt the same evening that Morton was arrested, and must have told him that Morton aided in the robbery, as there is no evidence that up to that time there was any suspicion that Morton had anything to do with the crime. The marshal testified that Church and Morton had a conversation. All that he appears to have heard was Morton's statement that he was not guilty; that the watch was not found on him. This was no corroboration. In *Ettinger* v. *Commonwealth*, 98 Pa. St. 338, 345, the court said: "When a man at full liberty to speak, and not in the course of a judicial inquiry, is charged with the crime and remains silent, that is, makes no denial of the accusation by word or gesture, his silence is a circumstance that may be left to the jury." This court, in *People* v. *McCrea*, 32 Cal. 98, cited *Rex* v. *Smithies*, 5 Car. & P. 332, where it was held that observations made to the prisoner by his wife on the subject of the fire, to which he made an evasive reply, were admissible under the general rule "that whatever was said to a prisoner on the subject-matter of the charge, to which he made no direct answer, was receivable as evidence of an implied admission on his part."

Here the defendant declared he was not guilty, and whatever he said about the watch (as to which Nesbitt was not positive) must be held to have been consistent with that declaration, at least in the absence of the statement by Church which called for defendant's reply. It is the thing that was said by the officer to the defendant that gives point and interpretation to the reply, and if objections had been made defendant's statements would have been excluded, and under the circumstances we must presume that everything Morton said at that time was consistent with the statement it is conceded he did make, that he was not guilty. It would be a hard rule that would equally implicate Morton whether he was silent or denied his guilt. In *Childers* v. *State,* 52 Ga. 106, it was said, speaking of the defendants convicted on the testimony of the accomplice: "It may be these men are bad, guilty men, but if they are convicted, it ought to be under the rules of law. To justify this verdict would be, in our judgment, to make the best men in the land subject to the danger of conviction by any guilty scoundrel who might attack them."

"The corroboration of an accomplice required by law in order to warrant a conviction upon his testimony must tend pertinently to connect the accused with the offense. Corroboration as to matter having no tendency in this direction, however thorough and complete, will not suffice." (*Welden* v. *State,* 10 Tex. App. 400.) In that case the court further said: "We suggest this mode as a proper test: eliminate from the case the evidence of the accomplice, and then examine the evidence of the other witness or witnesses with the view to ascertain if there be inculpatory evidence—evidence tending to connect the defendant with the offense. If there is, the accomplice is corroborated; if there is no *inculpatory* evidence, there is no corroboration, though the accomplice may be corroborated in regard to any number of facts sworn to by him." In *Sims* v. *State,* 8 Tex. App. 230, the rule is thus stated: "The evidence must tend directly and immediately to connect the defendant with the commission of the offense." In New York, under the same code provision (Code Crim. Proc., sec. 399), it was said: "The corroboration, however strong in all other respects, must point to the connection of

the defendant with the *commission of the crime* to be of any avail.'' (*People* v. *Ryland,* 28 Hun, 568, 570.)

In the case at bar the accomplice might, with equal force, have implicated one of the others who were his companions in visiting the several saloons. In effect, the corroboration of the accomplice in this case is made to depend upon his veracity, which is the very thing requiring corroboration. It is not shown, except by the testimony of Stokes, that he and Morton left the saloon together, while he and two others show they did not return together; and we may add, it is doubtful whether any one of the dozen men who were drinking together during the evening at different saloons could tell where they were at any specified time.

It may be conceded that Morton had an opportunity to participate in the robbery,—that is, that he, with others, was with Hickling at the saloons, and might, alone or with Stokes, have committed the crime; but opportunity alone is not sufficient, especially where others had the like opportunity. If Hickling, Stokes, and Morton had met at some wayside saloon where there were no other visitors, and Stokes and Morton had left together shortly after Hickling left, and soon afterwards returned to the saloon together without Hickling, it might be contended with some degree of force that such circumstances ''tended'' to connect Morton with the commission of the offense ''without the aid of the testimony of the accomplice.'' Hickling only testified that he was robbed by two men, neither of whom he recognized. This corroborated the testimony of Stokes that he and another committed the robbery; but ''the corroboration is not sufficient, if it merely shows the commission of the offense or the circumstances thereof,'' and that is all that was shown by the testimony of Hickling, or any one save the accomplice. The corroboration of the testimony of the accomplice must be made without the aid of his testimony. If we strike out from this record the testimony of the accomplice, we have no evidence tending to connect Morton with the commission of the offense.

In *People* v. *Compton,* 123 Cal. 403, 411, the jury was instructed: ''It is sufficient if such corroborative evidence tends *in any way* to connect the defendant with the commission of the crime charged.'' This court said: ''This instruction fails

to take account of the essential character necessary to the corroborative evidence, which is, that, standing alone, or, as it is phrased in the code, 'without the aid of the testimony of the accomplice,' it must tend to connect the defendant with the commission of the crime. Here the jury was told that it is sufficient if such corroborative evidence tends *in any way* to connect the defendant with the commission of the crime. Such is not the law. It could tend to connect him with the crime by considering it with the testimony of the accomplice; yet if it is necessary so to consider, it would not be legally sufficient. It is legally sufficient only if, standing alone, it tends so to connect him.''

In *Gilliam* v. *State.* 3 Tex. App. 132, 137, (under a statute similar to ours,) the court said: ''There is evidence going to show that the defendant was in town that night, and that the next morning he was seen a few miles beyond the town, traveling in company with one of the released prisoners. It is further in proof that he was arrested in an adjoining county in company with this same prisoner, and that, when arrested, he was passing under an assumed name. It is admitted that these may be, and are, suspicious facts, but still they do not corroborate the material testimony of the accomplice, to wit, that the defendant was present at the time and place, aiding, assisting, and participating in breaking open the jail and rescuing the prisoners.''

In *People* v. *Koenig,* 99 Cal. 574, the defendant was convicted as an accomplice of one Sarah Brady, who admitted she committed the offense. She and defendant were acquainted, and had lived together more or less for a year or two. She testified that defendant advised her to steal the money, and said: ''If you don't get that money, you are no good.'' When she was arrested defendant went to the jail and requested to see her, and, upon being refused, said to the sheriff he had the wrong woman, and that he did not know or have anything to do with her. Defendant was temporarily employed at the saloon where the larceny was perpetrated, but this court said that that circumstance was of no significance beyond the fact that he had the opportunity to advise the commission of the offense; that his inquiry at the sheriff's office was not of sufficient importance to warrant a convic-

tion; that at most it could raise a bare suspicion, and fall short of such corroboration as can safely be relied upon to support a conviction. (Citing *People* v. *Ames,* 39 Cal. 403; *People* v. *Thompson,* 50 Cal. 480. See, also, *Coleman* v. *State,* 44 Tex. 111; 1 Greenleaf on Evidence, sec. 381, note 3, and cases there cited.) By the express language of the Penal Code, (sec. 1111), the corroborating evidence must, *without the aid* of the testimony of the accomplice, tend to connect the defendant with the commission of the offense, and we find in the record no such evidence. Hickling testified to all the circumstances of the robbery, but he did not recognize either of the men. Stokes's testimony was wholly unnecessary to prove the fact or the circumstances under which the act of robbery was perpetrated. What was there outside of the testimony of the accomplice to fasten even a suspicion upon Morton? He was one of a dozen men drinking and dancing and visiting various saloons, and we are pointed to no act of his indicating his connection with the crime, until Stokes, several days afterwards, delivered the watch to an officer and pointed to Morton as one of the two men whom Hickling failed to recognize, it may be for the purpose of shielding another and a closer friend who was his companion in the commission of the crime. The ease with which an accomplice can substitute an innocent person for the guilty companion led the judges, in the absence of a statute such as ours, to advise the jury to acquit in the absence of independent evidence connecting the defendant with the commission of the crime. The defendant Morton was asked by the district attorney upon cross-examination: "Do you remember saying to Mr. Stokes at the time you were first brought up to the superior court that 'There is no need for both of us going up for this thing'?" Counsel for defendant objected that it was incompetent, irrelevant, and immaterial, and not cross-examination. The objection was overruled, and defendant excepted, and the defendant answered, "No, sir."

Respondent contends it was proper cross-examination; that defendant testified in chief that "Upon the evening in question, or any other evening, I did not have any conversation with Stokes or any one else about robbing Hickling." This testimony was given in rebuttal of the testimony of Stokes, who

testified only as to what was said between them on the evening of the robbery. There was not the slightest allusion in the testimony of either of them to any conversation at any other time, until this question was put upon cross-examination. It is suggested that the question here objected to is the only one printed in the transcript, the testimony appearing in narrative form. But we cannot assume that other questions were put. If we could so assume it would not aid the respondent, since we must assume that all the testimony given does appear in the record, and there is nothing in the record from which it can be inferred that other questions were put or testimony given. Error will not be presumed, but if it appears from the face of the record, it cannot be destroyed or evaded by an assumption that there may have been questions put or testimony given that does not appear in the record. It is admitted by respondent that injury will be presumed from error, but it is contended that it sufficiently appears that no injury resulted to defendant. That injury did not result from this error is assumed from the fact that the defendant answered, "No, sir." The question implied that he had admitted his guilt to Stokes by saying, "There is no need of both of us going up for this thing." The jury would naturally assume that he had said so, or at least that the district attorney so believed, and that, of course, he would reply with a denial. It was well calculated to prejudice the jury, and certainly we are not justified in concluding that it did not.

I think that upon either ground—the insufficiency of the corroboration of the testimony of the accomplice, or upon the error of the court in overruling the objection to said question—the judgment and order appealed from should be reversed.

Smith, C., concurred.

For both the reasons given in the foregoing opinion the judgment and order appealed from are reversed.

Van Dyke, J. Lorigan, J., Beatty, C. J., McFarland, J., Henshaw, J.