[Crim. No. 1908. In Bank.—December 14, 1915.]

# THE PEOPLE, Respondent, v. SAMUEL P. ROBBINS, Appellant.

CRIMINAL LAW—INFAMOUS CRIME AGAINST NATURE—ACCOMPLICES—CORROBORATIVE EVIDENCE.—A boy of sixteen years of age, possessed of the average mentality of lads of that age, who submits to the perpetration upon his person of the infamous crime against nature, is an accomplice, and under section 1111 of the Penal Code, as amended in 1911 (Stats. 1911, p. 484), the defendant charged with the crime cannot be convicted on his testimony unless he is corroborated by other evidence which tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

ID.—CONSTRUCTION OF AMENDMENT TO SECTION 1111, PENAL CODE.—The amendment of 1911 to section 1111 of the Penal Code did not change the pre-existing rule as to the nature of the corroborating testimony essential to warrant a conviction.

ID.—COURTS ARE BOUND TO APPLY SECTION 1111, PENAL CODE, IN ALL CASES.—The court has no discretion in the application of section 1111 of the Penal Code, but is bound to apply it to all cases wherever an accomplice appears as a witness, and the state's case depends solely upon his uncorroborated testimony.

ID.—SUFFICIENCY OF CORROBORATION—MERE SUSPICION OF GUILT INSUFFICIENT.—It is necessary that the corroborative evidence shall connect or tend to connect the defendant with the commission of the crime. The evidence is insufficient where it merely casts a grave suspicion on the accused. And where the circumstances proved, taken separately or collectively, are consistent with the innocence of the accused, there is no corroboration, and a verdict of conviction will be set aside.

ID.—INSUFFICIENT CORROBORATIVE EVIDENCE.—In this prosecution for the infamous crime against nature, it is held that the evidence of the complaining witness was not sufficiently corroborated to sustain the conviction.

ID.—OPPORTUNITY TO COMMIT CRIME.—The mere opportunity to commit such crime is not an incriminating corroborative circumstance sufficient to sustain a conviction.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order refusing a new trial. Franklin A. Griffin, Judge.

The facts are stated in the opinion of the court.

George A. Knight, J. F. Sheehan, and Knight & Heggarty, for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

MELVIN, J.—The district court of appeal of the first appellate district filed an opinion in this case, but this court ordered the transfer of the action, to the end that we might further consider the two questions: (1) Was the complaining witness an accomplice? And (2) If an accomplice, was he sufficiently corroborated?

The opinion of the learned district court of appeal was as follows:

"By the Court.—The defendant in this case was informed against and convicted of the infamous crime against nature, and thereafter sentenced to five years in the state prison The appeal is from the judgment and from an order denying a new trial.

"The only evidence adduced upon the entire case as to the actual commission of the offense is to be found in the testimony of the complaining witness, a boy of about the age of sixteen years. His testimony reduced to narrative form is as follows: 'I live at 1638 Baker Street and go to school at the Emerson Primary School. On September 15, 1913, I was living there with my father, mother, grandmother, uncle, and the landlady of the house, Mrs. Nute, who is the housekeeper. I know and for five years past have known the defendant, Samuel P. Robbins. On September 15, 1913, he came to my house at about 3 o'clock in the afternoon. I heard from him before he came to the house. When I came home to lunch at about 12 o'clock he phoned and asked me if he could come up and see me at the house and I said, "Yes," and he said he would be up about 3 o'clock. I saw him at 3 o'clock in the hall of my residence. I said, "How do you do?" He replied, saying, "How do you do?" We went into the dining-room and played dominoes for twenty-five minutes. Then we went down into the yard and played a game of tennis ball for twenty-five minutes. After that we went upstairs to the bathroom, because he wanted to wash his hands.

We entered the bathroom together, as he had asked me to go there with him. He locked the bathroom door. It locks with a bolt and he put a handkerchief over the lock. He pulled down the shade on the window, not all the way but only about halfway down. The glass on the window is lumpy glass, that you can't see through—that is, it is frosted. Robbins let the water run in the faucet in the wash-basin.'

"Further details of the testimony of this witness as to what occurred need not be narrated here. It will suffice to say that his testimony was to the effect that the crime alleged was perpetrated upon him in the bathroom; and that while in the consummation of the act charged a noise was heard at the bathroom door, and the defendant thereupon said he must stop because he was afraid of being caught. Further testifying, the witness said in substance that after he heard the noise at the door Robbins, the defendant, washed his hands with the flowing water in the basin and rearranged his clothes, unlocked the door, and after saying good-by left the house.

"Mrs. Nute, the landlady and housekeeper above referred to, was called as a witness for the prosecution, her testimony, reduced to narrative form, being as follows: 'I live with the father and mother of the complaining witness. I have lived there two years and four months as a housekeeper. The boy is sixteen years old. I was living with them on September 15, 1913. I do not know the defendant Robbins personally, but have seen him at the house of the father and mother of the boy. I saw him there on September 15, 1913. He was coming through the hall going to the dining-room. He remained in the dining-room twenty or twenty-five minutes with the boy; then he went down in the back yard with the boy and played ball with him about twenty or twenty-five minutes. The defendant Robbins then came up and went into the bathroom with the boy. They both entered and the door was closed. I was at my bedroom door and I saw Robbins and the boy enter the bathroom. I heard the door closed and bolt thrown back. I heard the bolt—a patent bolt—click. I went to my room, which looks out at the bathroom window in the light-well right off of the hall, the same as the bathroom. The bathroom window overlooks the light-well, and so does mine. The bathroom window glass is frosted and cannot be looked through. I went into my room and looked through the lace curtains. It was kind of dark in my room.

I looked over at the bathroom window. It was up about eight inches. It was open. I saw Robbins go up to the window and look over toward my room and pull the window down. I saw Robbins hauling on the window. My window is about eight feet from the bathroom window. I saw the window-shade drawn down. I do not know who did it. Then I went out of my room to the bathroom door and heard the water running. It had been running quite a while before I got there. I was going to stand at the door and listen, but my hand accidentally knocked against it and made a noise. I heard Mr. Robbins talking to Sidney but could not hear what he said. I stepped back to the kitchen, stayed there about five minutes, and saw Sidney and Mr. Robbins come out. I did not see Robbins after that. I went into my room and closed the door. There is no key-hole in the bathroom, simply a bolt. If there had been I would have peeked through it like any other woman.'

''The primary point presented upon this appeal is that the evidence shows that the complaining witness was an accomplice in the crime charged, and that the defendant was convicted upon the uncorroborated testimony of an accomplice.

''It is conceded, as indeed it must be, that the complaining witness was an accomplice; and that the verdict and judgment cannot be sustained unless there is in the record evidence sufficient to corroborate the story told by the complaining witness. Section 1111 of the Penal Code explicitly declares that a conviction cannot be had on the testimony of an accomplice unless he is corroborated by other evidence which tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. It will thus be seen that the statute imperatively makes corroboration of the testimony of an accomplice an essential prerequisite to the conviction of a defendant where the crime charged rests primarily and solely upon the testimony of an accomplice; and it is apparent, therefore, that the court has no control over the subject except to apply the statute. The court has no discretion in the matter, but is bound to apply the statute indiscriminately to all cases wherever an accomplice appears as a witness, and the state's case depends solely upon his uncorroborated testimony.

"We are of the opinion that the circumstances attending and preceding the entrance of the boy and the defendant into the bathroom, as narrated by the witness Mrs. Nute, are not sufficient singly or all together to constitute that corroboration which in the eyes of the law will support a verdict founded primarily upon the testimony of an accomplice. The rule in this behalf is well and tersely stated in 12 Cyc., at page 456, where it is said: 'It is necessary that the evidence corroborating an accomplice shall connect or tend to connect the defendant with the commission of the crime. Corroborative evidence is insufficient where it merely casts a grave suspicion upon the accused. It must not only show the commission of the offense and the circumstances thereof, but must also implicate the accused in it. . . . But where the circumstances when proved, taken separately or collectively, are consistent with the innocence of the accused, there is no corroboration, and a verdict of conviction thereon will be set aside.'

"In the present case the entrance of the defendant and the boy into the bathroom after having played a game of tennis was neither unnatural nor suspicious; and the fact that the bathroom door was closed and locked, and the window pulled down and the shade partly drawn, would not ordinarily be considered as preparation for an evil purpose. The turning on of the water in the bathroom was but natural and to be expected under the circumstances; and the fact that the conversation of the boy and the defendant could not be heard outside the bathroom door is of no particular significance. Necessarily a conversation carried on behind a closed door is more or less muffled. None of these facts and circumstances is inconsistent with the innocence of the defendant. On the contrary, they are all consistent with an innocent purpose. People entering a bathroom for the usual and ordinary purposes of such a room as a matter of course lock the door and draw the blinds and use the water at hand. Surely, if all of these circumstances be consistent with an innocent purpose, it cannot be said that any of them tended to connect and implicate the defendant with the commission of the offense charged. The fact that the defendant had an opportunity to commit it is of no particular significance as far as corroboration is concerned. Of course, the opportunity of the defendant to commit the particular crime for

which he is on trial may always be shown in connection with other facts to establish his guilt; but we know of no rule which holds that mere opportunity to commit a crime is an incriminating corroborating circumstance. Following the rule that evidence offered for the purpose of corroborating an accomplice must tend to connect the accused with the offense charged, it has been held that there must be corroborating testimony by some witness other than the accomplice as to some act or fact which is an element of the offense charged. (*Cooper* v. *State*, 90 Ala. 641, [8 South. 82].) Therefore, the fact that the witness, Mrs. Nute, either intentionally or inadvertently struck the door of the bathroom while she was endeavoring to hear the conversation of the boy and the defendant was a comparatively unimportant fact, which, in our opinion, had no tendency to connect the defendant with the commission of the offense. At its best, it did no more than confirm the boy's testimony that he heard a noise at the door, but it does not tend to show that the defendant was engaged in a criminal act. The fact that the suspicion of this witness was aroused because she saw the defendant and the boy enter the bathroom is not, in our judgment, corroborative evidence in any sense of the term. The most that can be said in favor of the prosecution upon this phase of the case is that for some reason not explained or detailed the suspicions of the witness were aroused; but it is the rule, and the well-settled rule, in this state that the corroborative evidence required to convict the defendant in addition to that of the accomplice is not sufficient if it merely tends to raise a suspicion of the guilt of the accused. This is all that the circumstances of the present case did in the mind of the witness, Mrs. Nute; and we are satisfied that those circumstances as narrated by her upon the witness-stand could do no more than raise a suspicion in the minds of the jury as to the guilt of the defendant. Mere suspicion, as has been shown, will not suffice as corroborative evidence; and where the evidence relied upon as corroborative of the accomplice is, as in the present case, only such as to raise a suspicion of the guilt of the defendant, the verdict must be set aside."

We are in accord with the foregoing discussion and with the conclusions reached.

The learned attorney-general insists that he did not "concede" in the hearing before the district court of appeal that

the boy was an accomplice. Be that as it may, he has made the point here that, so far as the testimony reported in the transcript shows, it does not necessarily appear that there was any consent to the defendant's acts, but merely passive submission. The obvious answer to this is the simple one that the burden of proof is upon the prosecution. If the alleged victim of defendant's depravity was not *sui juris,* that was something for the prosecution to prove. *People* v. *Dong Pok Yip,* 164 Cal. 143, [127 Pac. 1031], is cited as authority upon this question. In that case the child upon whom the assault was committed was a little fellow nine years of age, and not of ordinary intelligence for his years, and it was held that his mere failure to repulse the assault of the defendant was not in law a consent. In this case the facts were different. The boy was sixteen years of age, and while it appears that he had only attended school for a short time, there was nothing in the evidence to indicate that he was not possessed of the average mentality of lads of his age. According to his own testimony, he submitted to a removal of a part of his clothing by the defendant and even obeyed the suggestion of the latter that he assume a posture convenient for the perpetration of the crime. He made no outcry and no complaint until Mrs. Nute interrogated him, on the following day, with reference to the occurrences in the bathroom. His conduct as described by himself was within the meaning of the definition of an accomplice in *People* v. *Coffey,* 161 Cal. 448, [39 L. R. A. (N. S.) 704, 119 Pac. 907], where Mr. Justice Henshaw, delivering the opinion of the court, said: ''Where the act requires the co-operation of two persons, and their co-operation is criminally corrupt, the relationship of accomplice is at once established, as in adultery and fornication.'' That this case was tried upon the theory that the boy was an accomplice there can be no doubt. The learned judge of the superior court properly instructed the jury upon the necessary corroboration of an accomplice which would justify a conviction. He gave no definition of the term ''accomplice,'' and left to the jury the decision of no question of fact upon which, under the law, it would follow that the complaining witness was or was not an accomplice. We are convinced that this course was the proper one, because taking the testimony of the complaining witness as true, he was undoubtedly an accomplice.

Was the boy sufficiently corroborated? Before discussing
this question we will dispose of the contention of the learned
attorney-general that the rule with reference to corroboration
has been changed by the amendment of 1911 to section 1111
of the Penal Code. Before its amendment that statute was
as follows:

"A conviction cannot be had on the testimony of an accom-
plice, unless he is corroborated by other evidence which in
itself, and without the aid of the testimony of the accomplice,
tends to connect the defendant with the commission of the
offense; and the corroboration is not sufficient, if it merely
shows the commission of the offense, or the circumstances
thereof." In the year 1911 the section was amended and its
language is now as quoted below:

"A conviction cannot be had upon the testimony of an
accomplice, unless he be corroborated by such other evidence
as shall tend to connect the defendant with the commission
of the offense; and the corroboration is not sufficient if it
merely shows the commission of the offense or the circum-
stances thereof." (Stats. 1911, p. 484.)

It is argued that this section, as amended, may be para-
phrased as follows: "A conviction can now be had on the
testimony of an accomplice if he is corroborated by other evi-
dence, which not necessarily in itself, but with the aid of the
testimony of an accomplice, tends to connect the defendant
with the commission of the offense." This is only another
way of interpreting the section to mean that a conviction
may be had upon the testimony of an accomplice if the prose-
cution can produce any corroboration of any of his state-
ments, even if the acts described by him and so corroborated
have no essential connection with any crime and may be as
consistent with innocence as with guilt. It is not our duty
to speculate with reference to the intention of the legislature
in passing any given law, but if we should hazard a guess
upon that subject, we should say that probably the language
contained in the section in its earlier form but omitted from
the later enactment was thought by the legislators to have
a tendency to mislead jurors into the false belief that a com-
plete case for the prosecution must be established without
reference to the testimony of the accomplice. Whatever
may have been the purpose in modifying the phraseology of
the section, we cannot see that its meaning has been changed

at all. In discussing the reasons for the rule, Mr. Justice Henshaw, in the opinion in the case of *People* v. *Coffey, supra,* said (161 Cal. 438, [39 L. R. A. (N. S.) 704, 119 Pac. 903]): "In this state, the rule of positive law since the year 1851 is as has been declared in section 1111 of the Penal Code. Time has not changed the value of such evidence and succeeding legislatures have retained the rule, the amendment to the section in 1911 not materially affecting it." It may be that the quoted language was not necessary to the decision, as the old form of the law was under discussion, but the reason for retaining the rule was before the court, and it was interesting as well as valuable to note that no material change had been made in the statute in so many years. Whether the language just quoted from the opinion in the Coffey case was there *obiter* or not, it expressed the truth, and we adopt it in this opinion.

The counsel for the state specifies nine reasons and an incidental matter which, it is asserted, amount to corroboration of the lad's testimony. We quote them from one of the briefs as follows:

"(1) Defendant meeting the boy at the latter's house;

"(2) The preliminary games in the dining-room and back yard;

"(3) Going into the bathroom with the boy;

"(4) Then the closing of the door;

"(5) Then the locking of the door;

"(6) Then the additional precaution of Robbins pulling the window down;

"(7) The further act of pulling down the curtain although the glass in the window was frosted;

"(8) The noise at the door made by Mrs. Nute as her hand accidentally struck the same while listening;

"(9) The parties emerging together, not immediately, but about five minutes after.

"Incidentally, and in addition to the above, the defendant testified he was fifty-six years of age, and Mrs. Nute testified that the boy was sixteen years old, so the disparity of the ages of the defendant and the boy made this quite an unusual friendship, and therefore is a circumstance to be considered. It would not be so unusual were they related."

We have examined these alleged corroborations in detail and we cannot see how, singly or in combination, they tend

to corroborate the boy's testimony, except that they show opportunity of the defendant to have committed such a crime as the boy described. That is not enough. It was in evidence, without contradiction, that the defendant was on terms of friendship with the boy's father and mother and that he had frequently visited the house. He went there openly and played with the boy innocent games in the dining-room and out of doors. What was more natural than the going of the man and the boy to the bathroom to wash their hands after their game in the yard? The closing and locking of the door were not indices of guilt, even if it be conceded that defendant, and not the boy, performed those acts. There was no corroboration on the part of any person of the boy's statements that Robbins did these things. Mrs. Nute simply "heard the lock click." But even if we regard that as corroboration of the boy's statement, there was nothing sinister in the closing and locking of the door. Nothing could be more natural than these simple precautions on the part of the man or the boy to prevent anyone from entering the room while they were removing the dirt from their hands and faces. There was nothing more than enough, perhaps, to create a mere suspicion in the fact, if it were a fact, that Robbins made some adjustment of the window, but there is only partial corroboration of the boy's testimony on that matter by Mrs. Nute. The complaining witness did not say a word about the lowering of the window. He said that defendant pulled the shade halfway down, although the glass was frosted. Mrs. Nute said that she saw Mr. Robbins go to the open window and pull the *window* down. This she observed from the window of her room across the light-well. She said that she saw the shade pulled down. Of course, she could not tell by whom. It is true that the boy and Mrs. Nute agree about the noise at the door, but that corroboration is absolutely unimportant. If the two persons in the bathroom were engaged in perfectly innocent occupations, the noise made by the woman at the door would have been heard by them. The length of time occupied by· the man and boy in the bathroom was not an unusual period for the washing of their hands and faces. It by no means indicated the commission of a crime. Nor was the friendship of the middle-aged man for the lad anything to cast suspicion upon the former. In these days of the "big brother movement" thou-

sands of men throughout the country are systematically cultivating the friendship of boys, to the end that the influence of mature thought and association with men may aid in the development of the best qualities of the children. Viewed in the light most damaging to the defendant, the only thing which may be said of the corroborated circumstances related in the boy's testimony is that they might arouse suspicion of wrongdoing on the part of Mr. Robbins. But men are not and should not be convicted of degrading crimes upon mere suspicion plus the story of an accomplice. The useless pulling down of the shade over the frosted window is no more a suspicious circumstance against defendant than is the statement of the boy against the verity of his story when he says that Mr. Robbins covered with a handkerchief the lock of the door which Mrs. Nute says had no keyhole. On cross-examination the boy averred that there was a keyhole in the door. Mrs. Nute most emphatically testified that there was none, and added that if there had been she would have looked through it, "like any other woman." We do not mean to insinuate that either the boy or the woman deliberately told an untruth about the keyhole. We simply seek to emphasize the danger of convicting a defendant on "suspicious circumstances." The proofs of mere suspicious circumstances and of opportunity to commit a crime are never sufficient to justify a conviction upon the testimony of an accomplice. (*People* v. *Thompson,* 50 Cal. 480; *People* v. *Smith,* 98 Cal. 218, [33 Pac. 58]; *People* v. *Koening,* 99 Cal. 574, 576, [34 Pac. 238]; *State* v. *Willis,* 9 Iowa, 582; *People* v. *Morton,* 139 Cal. 725, [73 Pac. 609].)

It follows that the judgment and order must be, and they are, reversed.

Sloss, J., Henshaw, J., and Lorigan, J., concurred.

LAWLOR, J., Dissenting.—I dissent. Apart from the question of the legal characteristics of an accomplice, which I do not find necessary to discuss, I am satisfied that the judgment of the lower court should be upheld upon two grounds—first, that under the evidence the jury could have found that the minor was not an accomplice, and, second, assuming that he was an accomplice, his testimony was sufficiently corroborated.

I think it is clear that the jury could have found, as matter of fact, that the minor was not a willing or corrupt participant in the crime, in that he did not form the criminal intent to co-operate with appellant in its commission. A word about the evidence on this point: There is no suggestion in the record that the minor was consulted beforehand concerning the commission of the act, or that he, in any manner, affirmatively participated therein. The jury may have concluded from the evidence that he never acquiesced in the act. It does not appear that he protested against the criminal conduct of appellant, but, nevertheless, if he did not form the intention to join in the commission of the crime, it cannot be said that he consented. (*Levering* v. *Commonwealth,* 132 Ky. 666, [136 Am. St. Rep. 192, 19 Ann. Cas. 140, 117 S. W. 253].) On the subject of consent it was stated in *People* v. *Dong Pok Yip,* 164 Cal. 143, 147, [127 Pac. 1031] : ''There is a decided difference in law between mere submission and actual consent. Consent, in law, means a voluntary agreement by a person in the possession and exercise of sufficient mentality to make an intelligent choice, to do something proposed by another. 'Consent' differs very materially from 'assent.' The former implies some positive action and always involves submission. The latter means mere passivity or submission, which does not include consent.'' (Citing authorities.) It was said in *State* v. *Orrick,* 106 Mo. 111, [17 S. W. 176, 329], that ''mere consent to a crime, when no aid is given, and no encouragement rendered, does not amount to participation.'' (Citing Wharton, Criminal Law, sec. 211d, and other authorities.) To hold that the minor consented to the act, expressly or impliedly, is to declare that he acted ''voluntarily.'' (Wharton on Criminal Evidence, sec. 440.) The jury was, therefore, called upon to decide whether the silence of the minor indicated that he performed a voluntary or involuntary part in the transaction. Whether the minor formed the intention to participate with appellant in the act was essentially a question for the jury, and he, alone, could give direct testimony upon the point. The jury, however, could infer the state of his mind from the proven circumstances and find the fact either way. The silence or lack of protest on the part of the minor would not be conclusive; it would only be evidence which it would be proper for the jury to consider in connection with other facts tending to

solve the question whether he acted "voluntarily, and with common intent" united in the commission of the crime. (Wharton on Criminal Evidence, sec. 440.)

Under all the circumstances, the jury could well have found that the boy was not an accomplice upon any of the theories discussed, and, in my opinion, the judgment should be upheld on that ground alone.

The question whether he participated corruptly in the crime should be determined strictly upon the evidence in this case, and hence my views are not influenced by the facts in the case of *Dong Pok Yip, supra.* The minor in this case was only sixteen years of age. He did not attend school until he reached the age of eleven, notwithstanding that he lived with his parents and grandmother in apparently comfortable circumstances. The minor testified that he did not know, until Mrs. Nute, the housekeeper, informed him, that what appellant did was wrong. From the evidence the jury may have concluded that the minor did not possess the usual intelligence of one of his years, and that he was completely under the control of appellant, who was old enough to be his grandfather. In the eyes of the jury he probably appeared as a passive, undeveloped boy, subject to the will of the appellant, and they judged the case accordingly. Furthermore, in considering whether the boy consented it must be kept in mind that before the crime was committed appellant preliminarily performed another act upon the minor, which was probably intended to anticipate his resistance to the offense charged and at the same time stimulate appellant's own abnormal desires.

But if the minor was an accomplice, his testimony was nevertheless sufficiently corroborated. I shall first consider the character of the corroborative testimony required. The amendment of section 1111 of the Penal Code (Stats. 1911, p. 484) repealed the clause therein—"which in itself, and without the aid of the testimony of the accomplice." The adjudications touching this clause are to the effect that the corroborative evidence must be independent of the testimony of the accomplice. In *People* v. *Compton,* 123 Cal. 403, 411, [56 Pac. 44, 48], the rule is thus expressed: "It could tend to connect him with the crime by considering it with the testimony of the accomplice; yet, if it is necessary so to consider, it would not be legally sufficient. It is legally sufficient only

if, standing alone, it tends so to connect him." (*People* v. *Morton,* 139 Cal. 719, [73 Pac. 609] ; *People* v. *Lynch,* 122 Cal. 501, [55 Pac. 248] ; *People* v. *Creegan,* 121 Cal. 554, [53 Pac. 1082] ; *People* v. *Sternberg,* 111 Cal. 3, [43 Pac. 198].) But the repealed clause was not a part of section 1111 when the case was tried, and it is, therefore, sufficient, on this appeal, if any corroboration is shown—and it may either be entirely independent of the testimony of the accomplice or confirmatory thereof, provided that it tends to connect the appellant with the crime.

Now, as to the degree of proof required of the corroborative evidence: In *People* v. *Barker,* 114 Cal. 617, [46 Pac. 601], it was said: "The strength or credibility of the corroborating evidence is for the jury. It 'need not be strong; it is sufficient if it tends to connect the defendant with the commission of the offense; though if it stood alone it would be entitled to little weight.' (*People* v. *McLean,* 84 Cal. 480, [24 Pac. 32].) Nor need it extend to every fact and detail covered by the statements of the accomplice. (*People* v. *Kunz,* 73 Cal. 313, [14 Pac. 836] ; *People* v. *Cloonan,* 50 Cal. 449.) ''

But although more is required by way of corroboration than to raise a mere suspicion, yet the corroborating evidence is sufficient if it tends to connect the defendant with the commission of the offense, although it is slight and entitled, when standing by itself, to but little consideration. (*People* v. *Clough,* 73 Cal. 348, 351, [15 Pac. 5] ; *People* v. *Melvane,* 39 Cal. 614; *Kent* v. *State,* 64 Ark. 247, 253, [41 S. W. 849] ; *State* v. *Hicks,* 6 S. D. 325, [60 N. W. 66].) It is not necessary to corroborate the testimony of the accomplice by direct evidence. It is sufficient if the connection of the accused with the alleged crime may be inferred from the corroborative evidence in the case.

These instructions were given to the jury: "No one can be convicted upon the uncorroborative testimony of an accomplice. . . . If the proof in this case does not satisfy your minds to a moral certainty and beyond all reasonable doubt of the guilt of this defendant, it is your duty to find a verdict of not guilty. It is also the law, and I give it to you in this case in behalf of the defendant, that no one can be convicted upon the uncorroborated testimony of an accomplice. No matter how strong a suspicion of the guilt of the

defendant may be established in the minds of the jury by the testimony of an accomplice, no conviction can be had upon such testimony unless corroborated in some material point.''

The testimony of the accomplice is sufficient to prove the actual commission of the offense. (*People* v. *Leavens,* 12 Cal. App. 178, [106 Pac. 1103] ; *People* v. *Thompson,* 16 Cal. App. 748, [117 Pac. 1033] ; *People* v. *Barnnovich,* 16 Cal. App. 427, [117 Pac. 572].) Can it be maintained that, as matter of law, there was not sufficient corroborating evidence within the meaning of the rule to connect appellant with the commission of the crime? The testimony of the minor and Mrs. Nute is fairly stated in the majority opinion, and it will not be necessary to refer to it at length.

Mrs. Nute saw appellant and the boy enter the bathroom together and close the door, and then heard the click of the bolt in the door. She saw the appellant glance over toward where she was concealed behind a lace curtain in her own room and lower the window of the bathroom, and observed by the shadow on the frosted glass that the shade was drawn, but, of course, she could not determine by whom. The boy testified that appellant drew the shade, and, from Mrs. Nute's statements, it is a fair inference, in support of his testimony, that appellant, who lowered the window, also drew the shade. While the fact that Mrs. Nute entertained suspicions of appellant's purpose is not in any sense proper evidence on the question, yet her vigilance throughout may be considered in testing the accuracy of her observations. From her position in her own room she heard the water running quite awhile before she started for the bathroom door to listen. She heard the voice of appellant in a low key. It doubtless seemed significant to the jury that the pair were in the bathroom together such a length of time before she made the noise at the door; that they still remained for five minutes; and that appellant should leave the house as soon as he came out of the bathroom.

The inquiry naturally arises from these facts, Why did appellant and the boy go to the bathroom together; why bolt the door, glance over toward where Mrs. Nute was concealed behind the lace curtains, lower the window and draw the shade? It is incomprehensible that all these precautions would have been taken if the sole object was ''to wash their hands.'' The record is silent on the point whether the bath-

room afforded the usual accessories, and this is important in view of the elaborate precautions to avoid observation. Moreover, if the quoted expression was intended to include another use of the bathroom, the indelicacy of such a suggestion would not help the position of appellant.

If the jury believed the testimony of Mrs. Nute, it could have found that the minor was corroborated on "a material point," which the trial court instructed the jury was required. But there was further evidence which may have influenced the jury and led them to reject the testimony of appellant. Does it not seem strange that after making an appointment with the boy at noon for 3 o'clock, the domino and tennis games should be of such short duration? It was proper for the jury to consider the conduct of appellant when he was arrested and questioned in the presence of the boy, and thereupon made the incomplete answer: "I don't see why that boy should say that, I did not do." Nor when he said to the officer, on the way to the prison, "I do not know how you feel about it. . . . You are entitled to your opinion and I am entitled to mine. It is his word against my word." His replies were not indicative of one falsely accused, and hardly represented the attitude of an innocent man charged with an unspeakable crime.

His general reputation for the traits involved was put in issue. (Code Civ. Proc., sec. 2053; Pen. Code, sec. 1102.) Two of the five witnesses called on his behalf were asked, on cross-examination, if they had ever heard that he was accused of similar acts upon two other boys of the age of sixteen years, which questions were answered in the negative. In rebuttal, the prosecution called the two boys, both of whom gave testimony that his general reputation for the traits involved was very bad. The officer in the case gave similar testimony.

From a study of the entire evidentiary record it is clear that the conduct of appellant throughout was of an equivocal import, which the jury could have resolved either in favor of his guilt or his innocence. It has found against his innocence, and, if the evidence under any theory of fact is susceptible of such a finding, it should not be disturbed on appeal.