[Crim. No. 101. Fourth Appellate District.—March 19, 1930.]

THE PEOPLE, Respondent, v. TONY CIANI et al., Appellants.

B. W. Gearhart, Lindsay & Gearhart and Thomas E. Lopez for Appellants.

U. S. Webb, Attorney-General, and William T. Cleary, Deputy Attorney-General, for Respondent.

MARKS, Acting P. J.—By an information filed in the Superior Court of Fresno County appellants were charged with the crime of grand theft. It is alleged that they "unlawfully took the property of the Bond Investment Company, a corporation, consisting of 110 sweat-boxes of raisins, of a value in excess of $200.00, in lawful money of the United States." They were tried upon their pleas of not guilty and the jury found both guilty as charged. Their motion for a new trial was denied and they were sentenced to confinement in the state penitentiary for the term prescribed by law.

One Mike Devincentis was charged in a separate information with the same crime. He entered a plea of guilty and was granted probation. He testified as a witness for the People against appellants and furnished the most serious evidence against them.

The record before us shows that Porcelli owned a Dodge truck which was equipped with six wheels, two in front and four in the rear. These wheels carried the following makes of tires: Lee tires on the right front and both right rear wheels; a Goodrich Silvertown heavy duty cord on the left front wheel; a Sampson on the inside left rear wheel and a

Goodrich Silvertown cord on the outside left rear wheel. These tires were of the type known as nonskid or all-weather, with ribbing and indentations that left markings in their tracks peculiar to each respective kind of tire.

The Bond Investment Company owned a number of vineyards in the general vicinity of Fresno. One of them, called the Stellianos Ranch, was located near Reedly, about twenty-eight miles from Fresno. On January 19, 1929, there were 134 sweat-boxes filled with substandard Thompson seedless raisins, stacked near the driveway into the ranch. On January 21, 1929, 110 of the boxes with their contents had been stolen. It had rained during the week ending January 19th, and in the wet dirt of the driveway on the Stellianos Ranch on the morning of January 21st were tracks of truck tires that exactly corresponded to the tires on Porcelli's truck. These tracks were traced along the public roads for about eight miles from the ranch toward Fresno. The stolen sweat-boxes had the name of the Bond Investment Company painted upon them. The company owned several thousand similar boxes which were used in connection with its operations in its various vineyards.

Mike Devincentis was arrested and confessed, implicating Porcelli and Ciani, who were also arrested. According to Devincentis, he and Ciani were together at the poolroom in Fresno on the evening of either Saturday, January 19, 1929, or the next day, Sunday. At about 8 o'clock they were approached by Porcelli, who requested them to go with him into the country to get some raisins, he promising to pay Devincentis ten or fifteen dollars for the work. The three left Fresno in Porcelli's truck and proceeded to the Stellianos Ranch and loaded the truck with fifty-five sweat-boxes full of the raisins in question. They returned to Fresno at about midnight and unloaded the raisins in the yard of the house in which Devincentis lived. A second trip to the ranch was made when fifty-five more of the sweat-boxes full of raisins were loaded on the truck and again unloaded at Devincentis' home. Part of the raisins were stacked in Devincentis' garage and the balance in his yard. The three separated at about 4 in the morning, Porcelli taking his truck with him. Devincentis maintains that up to this point he had no idea the raisins were stolen.

Continuing with the story, he testified that a day or two after the raisins were taken, Porcelli told him to be careful about the raisins, and then or later, admitted that they were stolen. Devincentis secured some paint and with Porcelli's help painted out the name of the Bond Investment Company on some of the boxes. The two of them removed the raisins from over fifty of the boxes and put them in other sweat-boxes. They took the empty boxes of the Bond Investment Company and dumped them in an irrigation canal in or near Fresno. This completes the important parts of Devincentis' story. He did not charge Ciani with any knowledge that the raisins were stolen. His testimony was flatly denied by both appellants, who maintained that they had no part in the theft.

The three were arrested on or about February 2, 1929. An investigation was started at once to try and corroborate Devincentis' story. Substandard Thompson seedless raisins were found in sweat-boxes in his garage and yard. Some of the sweat-boxes had been newly painted and upon washing the ends with gasoline the name of the Bond Investment Company appeared. The irrigating canal was followed and forty-six sweat-boxes with the name of the Bond Investment Company upon them were found some distance down it. Porcelli's truck was found with tires having markings that were identical with the markings of the truck tracks at the Stellianos Ranch. One empty sweat-box with the end painted over was found among other boxes on a trailer in the yard of Ciani's house.

The raisins were weighed and sold to a packing-house in Fresno at a price of one and one-half cents a pound, or the total sum of $216.67. The evidence of witnesses for the People was to the effect that this was the reasonable market price of the raisins in Fresno at the time of the theft. The district attorney attempted to introduce evidence of the reasonable value of the sweat-boxes, but this was excluded by the trial court on the ground that the information charged the theft of the raisins, but not the boxes.

Two important questions are presented on this appeal, namely: First, was the testimony of Devincentis, an admitted accomplice, sufficiently corroborated to support the conviction of either or both of the appellants; and, second, does the evidence show that the stolen property was of the

value of more than $200? We will take these questions up in the order in which we have stated them.

■ Section 1111 of the Penal Code provides that the conviction of a defendant cannot be had upon the testimony of an accomplice unless such testimony be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense. The rule by which the sufficiency of corroborating evidence is to be measured has been considered in many California cases. It is clearly stated in the case of *People* v. *Woodcock,* 52 Cal. App. 412 [199 Pac. 565, 568], as follows:

"Where, as in this case, the prosecution relies upon the direct testimony of one witness and corroborating circumstances to prove the perjury, the character of corroboration necessary is like that in the case of an accomplice arising under section 1111 of the Penal Code. In other words, the corroborating circumstances used to support the testimony of a single witness must be more than evidence tending to prove that the testimony was given and that it may or may not be false. The rule as to the character of corroborating circumstances necessary to support the testimony of an accomplice is well stated in 12 Cyc., at page 456, quoted with approval by the Supreme Court in *People* v. *Robbins,* 171 Cal. 466, 470 [154 Pac. 317, 319], as follows: 'It is necessary that the evidence corroborating an accomplice shall connect or tend to connect the defendant with the commission of the crime. Corroborative evidence is insufficient where it merely casts a grave suspicion upon the accused. It must not only show the commission of the offense and the circumstances thereof, but must also implicate the accused in it. . . . But where the circumstances when proved, taken separately or collectively, are consistent with the innocence of the accused, there is no corroboration, and a verdict of conviction thereon will be set aside.' And in the same case the court said (171 Cal. 471 [154 Pac. 319]): 'The corroborative evidence required to convict the defendant in addition to that of the accomplice is not sufficient if it merely tends to raise suspicion of the guilt of the accused. . . . Mere suspicion, as has been shown, will not suffice as corroborative evidence; and where the evidence relied upon as corroborative of the accomplice is, as in the present case, only such as to raise a suspicion of the guilt of the

defendant, the verdict must be set aside.' Then again (171 Cal. 476 [154 Pac. 321]: 'The proofs of mere suspicious circumstances and of opportunity to commit a crime are never sufficient to justify a conviction upon the testimony of an accomplice. (*People* v. *Thompson,* 50 Cal. 480; *People* v. *Smith,* 98 Cal. 218 [33 Pac. 58]; *People* v. *Koening,* 99 Cal. 574, 576 [34 Pac. 238]; *State* v. *Willis,* 9 Iowa, 582; *People* v. *Morton,* 139 Cal. 725 [73 Pac. 609].)'

"In *People* v. *Morton,* 139 Cal. 719, at page 724 [73 Pac. 609, 611], the Supreme Court quoted with approval from *Welden* v. *State,* 10 Tex. App. 400, as follows: 'We suggest this mode as a proper test: eliminate from the case the evidence of the accomplice, and then examine the evidence of the other witness or witnesses with the view to ascertain if there be inculpatory evidence—evidence tending to connect the defendant with the offense. If there is, the accomplice is corroborated; if there is no inculpatory evidence, there is no corroboration, though the accomplice may be corroborated in regard to any number of facts sworn to by him.' And again on the same page, the court said: 'In New York, under the same code provision (Code Crim. Proc., sec. 399), it was said: "The corroboration, however, strong in all other respects, must point to the connection of the defendant with the commission of the crime to be of any avail." (*People* v. *Ryland,* 28 Hun (N. Y.), 568 570.)' ''

When we apply this rule to the case against Tony Porcelli we find that there is sufficient evidence corroborating the testimony of Mike Devincentis to support the verdict of the jury against him.

The case against Tony Ciani presents greater difficulties. There were two circumstances shown at the trial upon which the corroboration of Devincentis' testimony must stand or fall. More than a week after the raisins were stolen one of the sweat-boxes with the name of the Bond Investment Company painted out was found with a number of other boxes on a trailer standing in the yard at Ciani's home. Of course, this is a circumstance that would tend to raise a suspicion of his connection with the theft. The weight of this circumstance is greatly lessened when we recall that over forty of these same boxes had been dumped in an irrigation canal by Porcelli and Devincentis and were

washed down into the southwestern part of Fresno where many of them were recovered after the arrest of the defendants. There is nothing in the record that would preclude the assumption that one of these boxes had been picked up by a person not connected with the case and taken to Ciani's house. The other circumstance relied upon by respondent to corroborate the testimony of the accomplice is the flight of Ciani. After he was released from jail he left California and was found some time later in the state of Massachusetts. Flight is a circumstance admitted in evidence as showing a consciousness of guilt on the part of a defendant. The record shows, however, that at the time of the arrest of Ciani he was charged with another crime not connected in any way with the theft of the raisins. With the two charges pending against him the flight might have been occasioned by a consciousness of guilt of either or both of the crimes charged against him. This circumstance reduces the weight of the presumption against Ciani caused by his flight. After a careful reading of the entire record we believe that the testimony of Mike Devincentis is not sufficiently corroborated to support the verdict of guilty against Tony Ciani.

█ Whether or not the evidence shows the stolen property to have been of a value of more than $200 presents two questions that do not seem to have been decided in California. The first is presented by evidence which fixes the value of the raisins at the time of the theft in Fresno and not on the Stellianos Ranch, where they were taken. The second question arises under the language of the information as to whether or not theft of the sweat-boxes is charged so as to permit proof of their value as well as the value of the raisins.

It seems to be the established and well-recognized rule in a majority of the states whose decisions we have examined that in cases involving the theft of personal property, the value at issue is the market value of the property at the time and place of the theft. (*Robinson* v. *State*, 107 Neb. 591 [186 N. W. 977]; *People* v. *Cole*, 54 Mich. 238 [19 N. W. 968]; *State* v. *Mall*, 112 Kan. 63 [209 Pac. 820]; *State* v. *Maggard*, 160 Mo. 469 [83 Am. St. Rep. 484, 61 S. W. 184]; *Filson* v. *Territory*, 11 Okl. 351 [67 Pac. 473]; *Cunningham* v. *State*, 90 Tex. Crim. Rep. 500 [236 S. W.

89] ; *Keipp* v. *State,* 51 Tex. Crim. Rep. 417 [103 S. W. 392].) In two of the states east of California proof of the market value of the stolen property at any place within the county where the crime was committed has been permitted. This rule loses its particular force here when we remember that Fresno County is almost as large as these states. We believe the better rule to be that in cases of theft the value of the property taken should be fixed at the time and place where the property was stolen and if there be no market value at such particular place, at such other place sufficiently near and in such a like situation that the evidence will afford a fair measure of value at the place of the theft. (*Hoffman* v. *State,* 24 Okl. Crim. Rep. 236 [218 Pac. 176].)

As we have seen, the evidence of the witnesses fixed the value of the raisins at packing-houses in the city of Fresno, about twenty-eight miles from the place of the theft. One of the witnesses for respondent testified that the price would necessarily be less at the Stellianos Ranch than in Fresno. Respondent therefore failed to prove that the value of the raisins stolen was over the sum of $200 at the time and place of the theft.

The attorney-general attempts to meet this failure in the evidence to prove the value of the raisins at more than $200 at the time and place of the theft in a most ingenious manner. He argues that the language used in the information, "110 sweat-boxes of raisins," is not descriptive of quantity or size of the various parcels of the stolen property, but instead is descriptive of the "things stolen, that is, of 110 objects of personal property, each consisting of a box and the raisins therein contained," and that, therefore, the value of the property stolen was not merely the value of the raisins, but also the value of the boxes. He illustrates his argument by saying that the terms "diamond ring," "can of tomatoes," "sack of flour," "bottle of vinegar" and "carton of cigarettes" each refer to but one object, namely, the container and its contents. We must agree with him as to these illustrations. On the other hand, if a vendor sells 110 cars of iron, a barge of lumber or a truck of raisins, no one would contend that the buyer would receive the cars, the barge or the truck. We are immediately forced to the conclusion that in the illustrations used by the attorney-general he has selected finished

products where, in the common and general usage of trade, the container and the contents form but a single article, the container and contents being bought and sold together. Thus by generally accepted definition, the containers and their contents are included in the phrase. In the other illustrations used the words "cars," "barge" and "truck" are used as a measure of the quantity of their contents and by equally common definition are not included with their contents as one article. We therefore believe that where a finished product is prepared for sale, in and with its container, such as a "bottle of vinegar," the phrase refers to the container and its contents as one article, but where an article of trade is put in a container as a means of transportation or a measure of quantity such as a "car of iron," the phrase refers to the contents and does not include the container. ■ It appears in the record and is of common knowledge in the raisin district, that raisins are put in sweat-boxes for the purpose of curing. It is a matter of general knowledge that when a purchaser buys a quantity of raisins contained in sweat-boxes he receives the raisins and not the boxes under his contract. The sweat-boxes are not sold with the raisins unless there is a special contract including them. When the phrase "sweat-box of raisins" is used, reference is made to the quantity of raisins and not to the container and its contents. We must therefore hold that when the phrase "110 sweat-boxes of raisins" was used in the information, it was used in the general and accepted sense employed in the raisin districts of the state and referred to the raisins contained in the sweat-boxes and did not include the boxes, they being referred to in a descriptive sense as a measure of quantity only. The trial court properly refused to allow the respondent to introduce evidence as to the value of the sweat-boxes.

■ Appellants complain of rulings of the trial court upon questions of admission and rejection of evidence. We can find no error in these rulings. They were eminently fair to appellants. There was no error committed in refusing to give instructions requested by appellants. The instructions given covered all phases of the case and correctly stated the law.

■ There is no question that a theft of the raisins occurred and was proven. The conviction of Tony Porcelli of

this theft is supported by the evidence. Respondent did not prove his guilt of grand theft, but did prove him guilty of petty theft. Under the authority of *People* v. *Kelley*, 208 Cal. 387 [281 Pac. 609], we can reduce the degree of the offense to petty theft, and obviate a retrial of the case.

The judgment against Tony Ciani is reversed, with the direction to the trial court to grant his motion for new trial.

The judgment against Tony Porcelli is modified. The case against this defendant is remanded to the trial court. with directions to enter judgment against Tony Porcelli finding him guilty of petty theft, and to thereupon pronounce judgment upon him as prescribed by law.

Barnard, J., concurred.