[Crim. No. 3964. Second Dist., Div. Three. Feb. 15, 1946.]

THE PEOPLE, Respondent, v. EDWIN M. YOUNG, Appellant.

Edwin M. Young in pro per. for Appellant.

Robert W. Kenny, Attorney General, and Robert S. Morris, Jr., Deputy Attorney General, for Respondent.

DESMOND, P. J.—Defendant, charged with violating section 286 of the Penal Code, was found guilty by the court sitting without a jury. He appeals from the judgment of conviction and from the court's order denying a new trial. He contends in his brief, filed in propria persona, that the court erred in admitting in evidence his confession of guilt which he argues was not free and voluntary; further, that

without the confession the corpus delicti was not established by the prosecution. He relies for this point upon section 1111 of the Penal Code, which provides that a conviction cannot be had in a criminal trial upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense. Appellant cites us to *People* v. *Robbins* (1915), 171 Cal. 466 [154 P. 317], as a case involving the same charge as the one upon which he was convicted and where the court considered the application of the statute and ordered a reversal. The People in their brief summarize the situation in the following language: "Appellant argues that without the confession of appellant, there was no corpus delicti, inasmuch as the only other evidence of the commission of the crime was the testimony of the accomplice. With this, respondent agrees. But appellant further argues that the confession was erroneously admitted as evidence in that it was not freely and voluntarily given. With this, respondent disagrees."

It appears from the transcript that on or about February 28, 1945, appellant, 31 years of age, took in as his roommate in a Los Angeles hotel, a 17-year-old boy named Dave. On March 20th, shortly before midnight, after appellant and Dave had gone to bed in the double bed where they slept customarily, two police officers attached to the Juvenile Division entered their hotel room from an adjoining room, turned on the lights and arrested both men. Next day at approximately 11:30 a.m., another police officer named Simmons took Dave to the office of Dr. DeRiver "who talks to all people placed in Central Jail on sex offenses," and who at that very time was talking to this appellant. Simmons, testifying that he then interrogated Dave in the presence of Dr. DeRiver and appellant, related in great detail, over the objection of appellant's counsel, the conversation which he had with Dave in that interview and which fixed the crime as having been committed upon Dave by this appellant on or about March 2d, the date charged in the information. The officer testified that he then turned to the defendant and asked him if he had heard what Dave had said and he replied that he had; further, that "what David had said was the truth." Additional questions propounded by Simmons directly to appellant and related to the court brought answers which definitely fastened guilt upon him.

All this evidence was received over the objection of the appellant that the confession was not free and voluntary.

This objection was first made when officer Simmons undertook to relate what transpired in Dr. DeRiver's office. Appellant's counsel then interjected "May it please the court, I would like to make an offer of proof to negate any voluntary confession in this case, and I would like to put the defendant on for that purpose." The court ruled that the offer was in order and heard testimony not only from the defendant but from the boy David and officers Barrick and Suit, who made the arrest, and Probation Officer Bowman who accompanied them to the hotel. The testimony was to the effect that appellant was subjected to an inquiry conducted by the police officers immediately after being brought to the station. This inquiry lasted from forty minutes to an hour. According to appellant, upon his stating that he had not misconducted himself with Dave, one of the officers said, " 'I am going to knock a confession out of you; I am going to make you talk,' "; that he then ordered appellant to take off his glasses and when he had done so hit him in the stomach and knocked him down; that the other officer helped him up and the first officer then hit him across the face several times; that he was knocked down and helped up repeatedly and finally "I thought I might just as well talk a little bit to make them stop hitting me"; that his nose was bleeding and his face swollen and "I said 'All right, I will talk.' " Both police officers denied that they mistreated the defendant in any way or ordered him to take off his glasses, saying that they had been seated most of the time inquiring into relations between appellant and the boy, David; that appellant denied having had any improper relations. Mr. Bowman was seated at a desk across the room from the table where appellant was being examined. He testified that he was going over some of his papers and that the officers were questioning appellant in a rather loud tone; that appellant "refused to answer a question and they gave him a push, and I recall that he fell down to the floor. It seemed to me that he slipped or something and fell on the floor. . . . I believe that one officer reached down and assisted him to his feet. . . . They were standing there and there was some question asked . . . but the defendant said that this happened and the officer said, 'Oh, come on,' or something to that effect, and gave him a shove, and he seemed to slip and fall. . . . He said, 'Come on,' and he pushed him." This witness said that he saw no blood on appellant.

Under cross-examination appellant stated that when he

was in Dr. DeRiver's office he did not tell him about the beating which he claimed he had received about 10 hours previously at the hands of the police officers; that Dr. DeRiver, whom he knew, did not threaten him in any way and he was not afraid of him. He stated also that he did not call Mr. Simmons' attention to any violence or beating; that he had talked to Simmons on two occasions in February; that Simmons never abused him in any way; that he talked to him in a normal tone of voice, but he was scared of "pretty near everybody"; that Simmons "was a policeman from Georgia Street and these other guys who beat me up were also from Georgia Street, so I didn't know whether he would do the same thing as they did or not. Q. Did Mr. Simmons make any motion as if to beat you? A. No. Q. Did he shout at you? A. No. Q. Did he threaten you in any manner? A. No, he didn't threaten me in any manner. Q. Did he make you any promise of any kind? A. No."

Upon the conflicting testimony of the various witnesses the trial judge held that "there was no force or violence used there whatsoever and that any statement given by the defendant was given freely and voluntarily."

■ What ever may be said of the happenings in the Georgia Street jail, where, so far as the evidence shows, no admission of guilt was made by appellant, there was no showing of violence, threats or inducements at the interview in Dr. DeRiver's office. Appellant admitted his guilt at that interview and we cannot say under the circumstances of this case that the court erred in admitting the confession. At the trial David gave complete details of the offense charged against the appellant. Although the appellant took the witness stand concerning force and violence he did not deny his guilt.

Judgment and order affirmed.

Shinn, J., and Wood, J., concurred.