[Crim. No. 12767. Second Dist., Div. Four. Aug. 3, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. CONNELL CALDWELL, Defendant and Appellant.

Erling J. Hovden and Richard S. Buckley, Public Defenders, Lothair Schoenheit and James L. McCormick, Deputy Public Defenders, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Michael J. Smolen, Deputy Attorney General, for Plaintiff and Respondent.

FILES, P. J.—After a court trial defendant was convicted of forgery (Pen. Code, § 470) and he has appealed from the judgment.[1] We have concluded that the judgment must be reversed because defendant's connection with the offense was shown only by the testimony of an accomplice who was not corroborated as Penal Code section 1111 requires.[2]

Mrs. McCoy, aged 15, testified in substance as follows: Defendant gave her a county warrant payable to Rozalia Limon, in the sum of $165, and told her he wanted her to cash it. Another man, in defendant's presence, gave her an unsigned

[1]The notice of appeal says "sentence," which we understand to mean the judgment. (Pen. Code, § 1237, subd. 1.)

[2]Penal Code section 1111: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. . . ."

temporary driver's license. Upon defendant's instruction she signed the name Rozalia Limon on this license. Defendant then drove the witness to a market, where she tried without success to cash the warrant. Then defendant took her to a furniture store. The two of them entered. Defendant told her he would purchase a cheap lamp.

When the clerk approached the witness she told him she wanted a lamp and asked if he would cash her check. She showed the clerk the check, which she had already indorsed with the name of Rozalia Limon, and the driver's license for identification. The clerk said he would cash it, and invited her to the back room. Then the police came.

Rozalia Limon testified that she had never given anyone permission to indorse the check.

Ray L. Stiles, the credit manager at the furniture store, was the only witness other than Mrs. McCoy to involve defendant. After identifying Mrs. McCoy as the person who had presented the forged check to him, he gave this testimony:

"Q. Was anyone else with her at that time?

"A. I saw two people come into the store. I couldn't really tell who it was. I knew they was messing around, you know, looking around, browsing around, and then after the police department came I saw who it was. It was the person over there.

"THE COURT: Indicating the defendant, sitting at the counsel table?

"THE WITNESS: Yes, sir."

The application of the statutory rule is explained in *People* v. *Luker,* 63 Cal.2d 464, 469 [47 Cal.Rptr. 209, 407 P.2d 9]: "In order to corroborate the testimony of an accomplice the prosecution must introduce independent evidence which of itself connects the defendant with the crime without any aid from the testimony of the accomplice. The amount and type of evidence necessary to produce such corroboration obviously differs according to the circumstances of each case. [Fn. omitted.] As we recently stated in *People* v. *Holford* (1965) *ante,* pp. 74, 82 [45 Cal.Rptr. 167, 403 P.2d 423], 'The evidence required for corroboration of an accomplice "need not corroborate the accomplice as to every fact to which he testifies but is sufficient if it does not require interpretation and direction from the testimony of the accomplice yet tends to connect the defendant with the commission of the offense in such a way as reasonably may satisfy a jury that the accomplice is telling the truth; it must tend to implicate the defendant and therefore must relate to some act or fact which is an element ·

of the crime but it is not necessary that the corroborative evidence be sufficient in itself to establish every element of the offense charged.'' ' ''

In the case at bench the only fact corroborated was defendant's association with Mrs. McCoy at the furniture store. This fact is neither an element of the crime charged nor is it incriminating in any respect until it is colored by the testimony of the accomplice. Mrs. McCoy's testimony indicates that defendant did not personally sign or pass the warrant, but that he became criminally responsible as an aider and abettor. But his presence with Mrs. McCoy at the store is insufficient to corroborate either that he instigated, advised, assisted or encouraged the offense, or that he was aware of his companion's wrongful purpose.

The People have not cited any decision holding this kind of evidence to be sufficient corroboration. Defendant cites a pertinent analogy in *People* v. *Robbins,* 171 Cal. 466 [154 P. 317]. In that case a 16-year-old boy testified that he and the defendant entered a bathroom, closed and locked the door, drew the window shade and committed a criminal sex act. The corroborating witness observed the defendant and the boy enter the bathroom, heard the lock click, and saw the shade come down. Other evidence corroborated the testimony of the boy in all particulars except as to the criminal act itself. In reversing the conviction, the Supreme Court said (at p. 476) : ''Viewed in the light most damaging to the defendant, the only thing which may be said of the corroborated circumstances related in the boy's testimony is that they might arouse suspicion of wrongdoing on the part of Mr. Robbins. But men are not and should not be convicted of degrading crimes upon mere suspicion plus the story of an accomplice.''

The People's brief points out that in the *Luker* case, *supra,* 63 Cal.2d 464, an important corroborative fact was that the defendant and the accomplice were seen together immediately before and after the crime. It is also true that the corroborating evidence which was held sufficient in *Luker* did not directly prove any element of the offenses of robbery and murder, of which Luker was convicted. But the evidence there showed much more than association. There was nonaccomplice testimony that Luker had lied about his whereabouts on the evening of the murder and about his acquaintance with the accomplice, he had demonstrated fear and nervousness immediately after the murder, he had left the city abruptly, thereby forfeiting his rent and violating his parole, and he had told a

friend where he had "stashed the gun" which the accomplice wanted. (63 Cal.2d at pp. 469-471.) That kind of evidence showed a consciousness of guilt, and tended to connect Luker with the crimes charged without any aid from the testimony of the accomplice.

There is no comparable showing in the case at bench.

The judgment is reversed.

Jefferson, J., and Kingsley, J., concurred.